DETERMINED IN THE

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## October, 1875.

---

THE PEOPLE OF THE STATE OF NEW YORK, APPELLANTS, *v.* WILLIAM M. TWEED, IMPLEADED WITH THE MAYOR, ETC., OF NEW YORK, RESPONDENT.

5h  353
38 Mis⁵112

THE SAME, RESPONDENTS, *v.* THE SAME, APPELLANT.

*Complaint—amendment of—chapter* 49 *of* 1875—*election between various allegations of fraud—Bill of particulars—where defendant has made it impossible to furnish it—court will not sift out honest portion of fraudulent claim—Several sums obtained by fraud—one cause of action.*

In an action by the people, brought under the provisions of chapter 49 of the Laws of 1875, an order, made on the application of the defendant, to recover for whose malfeasance the action is brought, which requires the plaintiffs to amend the complaint so that it shall specify what right or interest in the premises the municipality, joined as a party defendant under the provisions of said act, "set up or pretend to," is erroneous for the reason that the party defendant so applying has no interest in such question and cannot take issue thereon.

In an action for fraud, the fact that the complaint goes largely into detail in describing the process and progress of the frauds set forth, does not justify the court in requiring the plaintiffs to elect between several allegations, all of which only lead up to the general averment which constitutes the real gravamen of the complaint.

A bill of particulars will not be required by the court when it appears that the defendant, by inducing his confederates to burn and destroy the books and papers from which such bill of particulars could have been prepared, has, to a great extent, made it impossible for the plaintiff to furnish it.

HUN—VOL. V.    45

# 354 PEOPLE v. TWEED.

In an action by the people under chapter 49 of the Laws of 1875, the court should not require the people to furnish a bill of particulars when the items to be furnished, if in existence, are contained in the public documents of a municipal corporation, or the private books or papers of the confederates of the defendant seeking such bill of particulars.

A conspiracy to sustain fraudulent claims by adding large sums to smaller lawful claims, and thus obtaining the total sum, taints the whole transaction and vitiates it *in toto*. Courts will not sift out the honest portion of the claim and charge only the excess fraudulently obtained against the wrong-doer.

In an action for moneys fraudulently obtained and unlawfully withheld, a suit to recover the gross amount may be treated as embracing but one cause of action. The fact that the moneys have been obtained by divers frauds perpetrated at different times, does not reduce the cause of action of the party defrauded to as many distinct causes of action as there are frauds.

Cross appeals from an order made at Special Term, providing that plaintiffs should serve an amended complaint, wherein they should specify what right in the premises was claimed by the Mayor, etc. That plaintiffs should either strike out so much of the complaint as alleges a neglect to audit the claims referred to, or should state in the complaint that they do not rely on the neglect to audit as a cause of action; or if plaintiffs do elect to rely on the neglect to audit as a cause of action, that they shall strike out so much of the complaint as sets forth any fraud, conspiracy or combination on the part of the said Tweed and Watson. That plaintiffs should serve on the defendant a bill of particulars of the plaintiffs' "claim," setting forth in full and in detail: The whole or such parts of items in each of the bills, accounts, vouchers or warrants mentioned in the complaint, as plaintiffs claim to have been false; the whole or such parts of items as plaintiffs claim to have been fictitious; the whole or such parts of items as plaintiffs claim to have been fraudulent; setting forth in each case such parts, portions or items of such bills, accounts, vouchers or warrants as they claim represent supplies, materials or labor not furnished to the plaintiffs, giving the description, date and amount thereof; and such parts, etc., as plaintiffs claim to have been overcharged, or otherwise false or erroneous — stating the amount and description of supplies, etc., actually charged — the prices at which they were charged, and those at which it is claimed they should have been charged. The moving party asked, in addition to the relief given by the order, that the complaint be set aside, because the causes of

action were not separately stated or plainly numbered. This portion of the motion was denied.

Plaintiffs appealed from the whole of this order except so much as denied a part of the motions, and from that defendant Tweed appealed.

*W. H. Peckham*, for the plaintiff. The order is appealable. It requires that to be done which is done already, *i. e.*, that plaintiffs state the rights of the corporation. It strikes out certain parts of the complaint giving to plaintiffs only an election as to which part shall go. Such an order affects a substantial right and is, in terms, appealable to the Court of Appeals, to which it can go only from the General Term. (Code, § 11, sub. 2; *Trustees* v. *Forbes*, 8 How. Pr., 285; Code, § 349; *Cruger* v. *Douglass*, 8 Barb., 81–86.) An order involving judicial discretion is always appealable. (*Tupp* v. *Cook*, 26 Wend., 143.) The General Term cannot dismiss an appeal simply because the order is discretionary. (*Matter of Duff*, 10 Abb. [N. S.], 416; 41 How., 350; *Fassett* v. *Tallmadge*, 15 Abb. Pr., 205; *Howell* v. *Mills*, 53 N. Y., 322.) This order is of a class that is always appealable. (*Watt* v. *Watt*, 2 Robt., 687; *Livermore* v. *Bainbridge*, 56 N. Y., 74; *Howard* v. *Freeman*, 3 Abb. [N. S.], 292; 7 Robt., 25.) The court erred in ordering plaintiffs to serve the bill of particulars. (Code, § 158.) Bills of particulars (not being a mere statement of an account alleged in the pleadings) are ordered only on special cause shown. (*Willis* v. *Bailey*, 19 Johns., 269; *Horlock* v. *Lediard*, 10 M. & W., 677; 12 L. J. [Exch.], 33.) The part of the order appealed from by the defendant should be affirmed. The common-law counts in debt and assumpsit, and the rules concerning the assignment of breaches in debt on bond furnish apt illustrations of the old law on this head. (*Gaffney* v. *Colvill*, 6 Hill, 578, and cases cited; *Acorne* v. *Am. M. Co.*, 11 How. Pr., 27, and cases cited; *Rowland* v. *Phalen*, 1 Bosw., 44; *Adams* v. *Holley*, 12 How. Pr., 329.) A swindling clerk who embezzles from time to time from his master's till, cannot compel a separate count for every abstraction. A rule requiring it would serve no useful purpose and would be very mischievous.

*Field & Deyo*, for the defendant.

DAVIS, P. J. :

This action is brought by the attorney-general in the name of the people of the State of New York, under the provisions of chapter 49 of the Laws of 1875. (Laws of 1875, p. 43.) The right of action is by that act vested in the people of the State in their corporate capacity, and authority is given to maintain and prosecute the action independently of any other public authority, and whether or not such authority be a party to the action brought by or on behalf of the State. Provision is, however, made by the second section of the act, by which the court in its discretion may order to be brought in as a party to the action, by or on behalf of the State, any party to an action brought for the same cause of action by or on behalf of any other public authority. And it is declared by the same section that a final judgment in the action brought by the State, shall be a bar to any action for the same cause brought by or on behalf of any other public authority. The complaint in this action very fully discloses the rights and interests of the mayor, aldermen and commonalty of the city of New York in the subject-matter of the suit, by showing fully that they were the parties directly injured by the alleged fraud, and that the plaintiffs seek to recover the moneys obtained from them by the fraudulent transactions alleged in the complaint. The mayor, aldermen, etc., are made parties to the action obviously for the purpose of rendering unnecessary a motion to bring them in as parties; and for the purpose also of putting them more readily in a position to make application to the court, under the third section of the act, in case of a recovery, for such disposition of the proceeds as will justly and equitably protect their rights and, in the language of the act, " reinstate their lawful custody, which was disturbed or impeded by the wrong complained of."

It was only necessary, therefore, to name the city as a party to the action, leaving its authorities to assert its rights in such form and manner as they should deem advisable. So much of the order as requires the plaintiffs to serve an amended complaint that shall " specify what right or interest in the premises the mayor, aldermen and commonalty set up or pretend to," was improperly granted for several reasons : First, those rights and interests are already set forth with sufficient fullness and clearness to enable

them to protect themselves, in case of a recovery, in all their just and equitable rights; second, because the defendant Tweed has no interest in the question as to what " right or interest" the mayor, aldermen and commonalty now "set up or pretend to," that being a matter of no legal importance to him, and one upon which he could take no issue, inasmuch as the right of action is perfect and complete in the plaintiffs by force of the statute, and cannot be defeated, nor should it be retarded by any false issues as to the present or future rights of the city.

That portion of the order which directs the plaintiffs, by their amended complaint, to strike out the allegation of neglect to audit the claims against the city, or state in such complaint that they do not intend to rely upon the neglect to audit as a cause of action, or to "strike out so much of the complaint as sets forth any fraud, conspiracy or combination on the part of said Tweed or Watson," cannot be upheld. It proceeds upon an altogether erroneous idea of the nature of the action and the object of the several averments.

The action is brought to recover some $6,000,000 alleged to have been fraudulently obtained from the city and county of New York by the defendant Tweed in conspiracy with others. It would, under the former system of practice, have been sufficient to have averred an indebtedness for so much money had and received to and for the use of the city, and under such averment to have shown the process by which Tweed and his confederates obtained the money which *ex equo et bono,* he and they are bound to return. The complaint in this case sets forth in larger detail substantially the same grounds of action, and it avers the process and pretenses under and by means of which the wrong-doers are alleged to have gotten possession of the money; and as a part of them it shows that Tweed held an official position in which it was his duty to have audited all claims of that kind against the county of New York, and thereby protect the treasury against false claims, and that he used that position, by a false pretense of auditing, when in fact no audit was made, as one of the steps to enable himself and his co-conspirators to defraud the county of the moneys now sought to be recovered. There are in the complaint no separate causes of action, and a mere recital of the various acts and practices, official or individual, cannot with propriety be said to be the averment of

distinct and inconsistent causes of action.  If the pleader, for greater caution, has gone more largely into detail in describing the process and progress of the frauds set forth, that is no good reason for compelling him to elect between several allegations, all of which only lead up to the general averment which constitutes the real gravamen of his complaint.  The order striking out or compelling an election can have no other effect than to embarrass the case on the trial by restricting the evidence, essential to a complete history of the transactions, to such portions as may be contained in the averments which will still remain in the complaint. The trial court might feel bound by the order to exclude all proof tending to show so much of that history as would be stricken out of the complaint, and thereby great injustice might result to the plaintiffs.  If there be technical faults of pleading in the complaint (which, however, we do not perceive), they are not such as can be prejudicial to justice, and therefore they are not the basis of such a motion as this.  The true object of technical rules is to promote justice or prevent injustice.  When they fail of those ends and come to eat like rust into the substance of justice, courts should neither encourage nor enforce them.

There are several substantial reasons why those portions of the order which require the service on the defendant's attorneys of the bill of particulars specified therein, should not be allowed to stand.  First. It is clearly apparent from the papers before us that it is not in the power of the plaintiffs to comply with many of the requirements of the order.  It is shown that to a great extent the conduct of the defendant has made such compliance impossible.  It is not contradicted that he required, or instigated his confederates to burn and destroy the books and papers which contained all the entries that existed of any real claims; not only the books and papers that contained such comparatively inconsiderable items are thus put beyond the reach of plaintiffs, but the enormous false accounts which were presented, and upon which the moneys sued for were obtained, are shown to have been, with a slight exception, feloniously taken from the public custody and doubtless destroyed, by some person interested in their destruction.  Upon these uncontradicted statements of the papers the defendant stands as a despoiler of evidence, and his

right to demand particulars of the contents of books and papers of his confederates, rests on no solid foundation. He should at least exculpate himself from all connection with the spoliation, and establish with satisfactory certainty that the plaintiffs have the means of furnishing the particular contents of the destroyed books and accounts, before he asks that their suit be perpetually arrested till such particulars be served. Second. The order requires that the bill of particulars shall not only set forth the particulars of plaintiffs' claims, but shall set forth "in full and in detail: 1st, the whole or such parts of, and items in, each of the bills, accounts, vouchers or warrants mentioned in the complaint as they claim to have been false; and, 2d, the whole or such parts of items as they claim to have been fictitious; and, 3d, the whole or such parts of items as they claim to have been fraudulent, and setting forth in each case the parts, portions or items of such bills, accounts, vouchers and warrants as they claim represent supplies, materials or labor not furnished to the plaintiff, giving the description, date and amount thereof, and such parts, portions or items as they claim to have been overcharged, or in any other respect false or erroneous, stating the amounts and descriptions of supplies, materials and labor actually charged, and the prices at which they were charged, and also stating the prices at which they should have been charged." The plaintiffs were not parties to the original transactions. Although strangers to them, they are clothed by law with power to sue as *parens patriæ* in cases of such alleged frauds, in order that public wrongs may not go unredressed. If all the papers, books and vouchers referred to in the order, or from which the particulars demanded must be obtained were in existence, they would still be the public documents of the city of New York, or the private books and papers of the alleged confederates of the defendant Tweed, and in that case it would not be the legitimate office of an order for a bill of particulars to require what is demanded by this order. The defendant would be directed to seek such facts, where the plaintiffs must themselves seek them, in the documents, books and papers, not under the control of plaintiffs, but in the public records, or private books and papers of others. A different rule would put it in the power of the defrauding parties to make all efforts of the State to recover under the act of 1875, difficult and perhaps wholly

nugatory. The collusion of officials or the connivance of the con-
federates in wrong, by doing precisely what appears in this case to
have been done, would put it in the power of a party sued, by
obtaining such an order as that above recited, with a stay of all pro-
ceedings till compliance with it on the part of the plaintiffs, to defy
the State and laugh at all its efforts to enforce the remedies given
to it by the statute. But it is of no legal consequence that the
defendant should have the particulars granted by the order. The
complaint alleges in clear and plain terms that all the claims upon
which the defendant and his confederates obtained the money were
wholly false and fraudulent. There is no allegation or concession
that any part of them was lawful or just. Upon such allegations
there is no ground for a demand that the plaintiff shall state what
parts of such claims were just and legal, or for items and services
actually furnished or performed. It is not the office of a
bill of particulars to enable the defendant to impeach or defend
the claims asserted by plaintiffs' complaint (*Drake* v. *Thayer*,
5 Robt., 694; *Fullerton* v. *Gaylord*, 7 id., 551), but to ascer-
tain what claims are asserted and demanded. So, where one sues on
an account for moneys loaned, the defendant cannot demand a
statement of what sums have been repaid (*Ryckman* v. *Haight*, 15
Johns., 202), or what portion of the loans was usurious, or what
credits ought to be allowed, for any reason, against the loans. ( *Wil-
liams* v. *Shaw*, 4 Abb. Pr., 209.) If the demand be for $10,000
of moneys lent, the defendant may demand the items that make up
that sum, with dates and amounts of the respective sums, and the
plaintiff will be required to specify such dates and amounts of
loans. But if he avers that $10,000 is due and unpaid, he cannot
be compelled by bill of particulars to contradict that averment by
showing that the amount actually loaned is not due because some
portion has been paid, or some credit or counter-claim exists
against it. The averment of the plaintiffs that the claims upon
which the moneys were obtained in this case were altogether false
and fraudulent, do not, under well settled practice, allow the defend-
ant to demand a bill stating what parts of such claims were not of
that character. The defendant seems to have acted upon the idea
that if the claims presented contained some item or items justly
demandable, and which might by themselves have been properly

presented, audited and paid, that fact will, *pro tanto,* enable him to insist that the claims were not fraudulent and the money was properly obtained. Such a position would be equally unsound in morals and in law. The claims presented and paid, as alleged in the complaint, would be fraudulent *in toto* and not in part. The conspiracy to build up claims of many thousands, upon items of as many hundreds, and thus fraudulently obtain the larger sum, taints the whole transaction with fraud, the virus of which permeates every nerve and fibre of the claim and destroys the whole. No court will sit in such a case to sift out for the benefit of criminals the items that might have been the basis of a just claim if presented in an honest manner for an honest purpose. The wrongdoer must restore the fruits of his wrong, and is not at liberty to offset any honest claim he may possess against his crime. It is not the just claim that has been presented, but one none the less false because some real item has been used to give a color of truth to the deception. But in no admissible view has the defendant Tweed any right or interest in the question whether the parties who conspired with him to commit the fraud had some show of claim, which, if properly presented and audited, might have been lawfully paid. He can neither set off nor recoup such claim, not only because he has no legal interest in it, but because it has never reached the condition, by lawful presentation and audit, upon which any legal obligation to pay arose against the city or county. It is a matter of no moment to him how much just claim his confederates might have honestly made, since, in fact and in law, they made none honestly, and he joined with them in procuring payment of their dishonest claims for the purpose of sharing the unlawful proceeds. And lastly, the schedules annexed to the complaint fully advise the defendant of each particular account or claim which the plaintiffs aver was false and fraudulent, and the amount of the money obtained upon them respectively, and the dates and form in which they were obtained. They are in themselves a complete bill of particulars of the several sums for which the action is brought. We are able to conceive of no ground upon which the order can be upheld. The order appealed from by the plaintiffs must be reversed, with ten dollars costs, besides disbursements, and the motion be denied with ten dollars costs.

The appeal on the part of the defendant presents the question whether the court below should have compelled the plaintiffs to make the complaint more definite and certain, or have stricken out portions thereof as irrelevant and redundant. This part of the motion was properly denied. It seems to proceed upon the idea that several causes of action are improperly united, or if not improperly united, that they should have been separately stated and numbered. We think it is a misapprehension of the nature of the action to insist that the complaint sets up several causes of action. The plaintiffs have a right of action for all the moneys fraudulently obtained by the defendant and his confederates in the manner set forth in the complaint. They may demand this as a whole, because the sum total is the amount of the indebtedness to them for which they are authorized to sue. The fact that the moneys were obtained by divers frauds perpetrated at different times, does not reduce their cause of action to as many distinct causes of action as there happened to have been frauds. The vendor of goods sold from time to time may sue upon the account as one cause of action, and so may the lender of moneys, although their several accounts are made up of numerous items running through a long period of time, and no court has ever deemed it necessary that each item should be set forth as a distinct cause of action, in a separate and distinctly numbered count. So, we have no doubt, when an action is given for moneys fraudulently obtained and unlawfully withheld, the gross amount may be treated as a single cause of action. This part of the motion below was rightly disposed of, and the order in that respect should be affirmed with ten dollars costs and disbursements. The order extending time to answer is revoked, and the defendant Tweed is allowed to answer within the time remaining unexpired when the order hereby reversed was entered.

DANIELS, J., concurred.

BRADY, J.:

In this action the defendant is charged with a fraudulent procurement and appropriation of several sums, indicated by warrants issued for their payment, amounting in the aggregate to several millions of dollars.

The averments of the complaint charge that the total sum was fraudulently and by false device obtained and used. A schedule of the warrants is annexed to the complaint. The defendant, on the assumption that valid claims to some extent were included in the various sums thus paid, and that it would so appear by a bill of particulars if ordered, applied for one. He thus seeks, it would seem, to change the character of the demand made against him, by reducing his liability just such an amount as the acknowledged validity of these claims might make. The obligation to give this information, if imposed, would necessarily require the plaintiffs to examine and ascertain what part of each warrant, if any, represented a just and legal claim against the city, a duty which was incidental to the office held by the defendant. It would, in effect, require the plaintiffs therefore to modify their demand, to forego, perhaps, the defendant's personal liability for the sum paid in gross, and to furnish the defendant with what would be, if admissible, as a part thereof, the principal if not the chief feature of his defense. It would change the gravamen of the complaint and make it substantially thus: the defendant fraudulently and by false device obtained warrants which were based upon valid claims to certain extent as follows, etc. This is not the case made by the complaint. If the defendant can lessen the apparent fraud by establishing an existing liability to some extent as to each warrant, the burden is upon him; the plaintiffs are under no obligation to admit any liability for any sum. The warrants being the result of frauds perpetrated, the presumption is not that they are fraudulent in part only, but in whole. When the warrants were given, the plaintiffs did all that they should be required to do according to this action, its object and nature. If, however, this view be erroneous, and it be by law incumbent upon the plaintiff, in an action like this, to dissect the fraudulent document, separating the good from the bad, and thus take upon himself the burden of protecting the defendant to the extent of his fair dealing, then it must be said that nearly all the vouchers relating to the warrants are destroyed, and were so, not by the city or the plaintiffs, but it would seem by the defendant or the persons with whom he was in league to perfect and carry out the system by which the frauds were accomplished. It further appears, at least as to some of the bills, that the prices charged

were fictitious, and that being so, no entries were made upon the books of the vendors, and they cannot be reproduced. These are difficulties which array themselves against the success of the application, and must defeat it. The learned justice in the court below, on this branch of the case, felt governed, it would seem, by the case of *The Mayor* v. *Marriner and Tweed*, but there is a distinction between that case and this; in that case the claim was alleged to be partly fraudulent only. I deem it unnecessary to go over the other points discussed by Justice DAVIS. I think he is right in his conclusions as to them, and that the disposition suggested should be made of the appeal.

Ordered accordingly.